PROFESSIONAL MODULAR SURFACE, INC., Plaintiff-Appellee, *v.* UNIROYAL, INC., Defendant-Appellant.—(AMALGAMATED TRUST & SAVINGS BANK, Defendant.)

First District (5th Division)   No. 82—0682

Opinion filed August 13, 1982.—Rehearing denied October 8, 1982.

David J. Gibbons and Mary L. Casey, both of Chicago (Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., of counsel), for appellant.

Michael J. Kralovec, of Chicago (Feiwell, Galper & Lasky, Ltd., of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:

This is an interlocutory appeal from the entry of a preliminary injunction by the trial court restraining payment under letters of credit. On appeal defendant Uniroyal (Uniroyal) presents this issue for review, that the trial court erred and abused its discretion in restraining the payment of an unconditional letter of credit on the basis of an alleged breach of an underlying contract. Plaintiff (PMS) raises the additional issue of whether Uniroyal elected to be relieved of its obligations under its agreement with PMS. We reverse. The pertinent facts follow.

PMS and Uniroyal memorialized a contract (Agreement) on August 15, 1979, whereby PMS was to act as the distributor of a product manufactured by Uniroyal. In November 1979 and February 1980, PMS arranged for Amalgamated Trust and Savings Bank (also a defendant in this action) to issue to Uniroyal two separate letters of credit in the total amount of $50,000. Disputes relating to the Agreement arose between PMS and Uniroyal and on November 19, 1981, Uniroyal filed a demand for arbitration. Uniroyal did not make a monetary claim in its demand other than for reimbursement of filing fees and expenses. PMS counterclaimed and sought damages from Uniroyal in an amount in excess of $1,137,424. Uniroyal's reply to the counterclaim states, among other things, the impossibility of performance on its part under the Agreement and again admitted that it was not making a monetary claim against PMS. These issues are now pending before an arbitration panel. In February 1982, Uniroyal demanded that the Bank pay it the entire $50,000 under the letters of credit, whereupon, PMS filed a verified complaint for injunction.

The allegations of the complaint set forth facts concerning the Agreement, the arbitration proceedings and Uniroyal's demand under the letters of credit. Both the Agreement and Uniroyal's demand to the Bank for payment of the sum provided for in the letters of credit are attached to the complaint. The complaint further alleged that PMS would suffer irreparable injury as a result of payment under the letters of credit because its credit would be impaired, it would be unable to continue its business, it would suffer a loss of its business and business opportunities, portions of the arbitration proceedings would be rendered moot, and PMS was without an adequate remedy at law. PMS also presented the court with a verified motion for a temporary restraining order. Uniroyal filed a motion to dismiss and strike com-

plaint for injunction under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45) and a separate motion to dismiss under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). The section 45 motion stated that the complaint was insufficient in law in that: (1) the letters of credit were not attached or set forth in the complaint; and (2) the complaint did not sufficiently allege an absence of an adequate remedy at law should Uniroyal receive payment under the letters of credit, as PMS failed to allege that the amount could not be subsequently collected from Uniroyal,

Uniroyal's section 48 motion asserted that the letters of credit were "clean" or "unconditional" since the letters expressly provided that "No documents need accompany the drafts." The Bank acknowledged that it had no knowledge of what the agreements were between PMS and Uniroyal and that but for an order of the court restraining payment, it would honor the letters of credit because it was not aware of any other documents or agreements that affected the letters of credit. The section 48 motion further asserted that there were no allegations of fraud in the complaint which affected the payment of the "clean" or "unconditional" letters of credit.

The court continued Uniroyal's motions and immediately entered a temporary restraining order preventing Uniroyal from receiving payment upon the letters of credit and preventing the Bank from making payment thereon. PMS was ordered to post a bond of $5,000 as a condition for the temporary restraining order.

Uniroyal then presented an emergency motion to vacate the restraining order and requested an immediate hearing on its pending motions to dismiss. This motion was continued along with the motions to dismiss. Subsequently, following argument, the court denied all of these motions, at which time Uniroyal stated that it would not file an answer but would stand on its motions to dismiss and seek an interlocutory appeal. The court then entered a preliminary injunction restraining Uniroyal and the Bank with respect to the letters of credit. The preliminary injunction found that the actions of Uniroyal were fraudulent, even though there is an absence of such allegation in the complaint. The court also released the $5,000 bond required for the temporary restraining order.

Uniroyal's appeal has asked us to consider the propriety of the following orders: (1) the circuit court's refusal to rule on its motions to dismiss the complaint before considering plaintiff's motion for a temporary restraining order; (2) the court's entry of the temporary restraining order; (3) the court's denial of its motion to vacate the temporary restraining order; (4) the court's denial of its motion to dis-

miss the complaint; (5) the court's release of the bond posted by PMS with the entry of the temporary restraining order; (6) the court's entry of the preliminary injunction; and (7) the court's refusal to require PMS to post a bond for the preliminary injunction or to require the Bank to deposit the funds with the court or into an interest-bearing account.

OPINION

Uniroyal has contended that the court abused its discretion in granting injunctive relief restraining the payment of an unconditional letter of credit on the basis of an alleged breach of an underlying contract, without any allegation of fraud in the transaction and without any showing that PMS has no adequate remedy at law.

The objective of a preliminary injunction is to preserve the status quo pending the disposition of the case on the merits. (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.* (1976), 44 Ill. App. 3d 220, 228, 357 N.E.2d 1307.) However, a preliminary injunction does not decide ultimate issues of the case. (*Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 299 N.E.2d 536.) A trial court is vested with broad discretionary power in granting or refusing a petition for a preliminary injunction, and a court on review will not set it aside unless there has been an abuse of discretion. (See *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 377 N.E.2d 1125; *Schwalm Electronics, Inc. v. Electrical Products Corp.* (1973), 14 Ill. App. 3d 348, 302 N.E.2d 394.) To justify the issuance of injunctive relief, a party must establish by a preponderance of the evidence that (1) they possess a certain and clearly ascertained right which needs protection; (2) they will suffer irreparable injury without the protection of the injunction; (3) there is no adequate remedy at law for the injury; and (4) they are likely to be successful on the merits. *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166; *Lake Shore Club v. Lakefront Realty Corp.* (1979), 79 Ill. App. 3d 918, 398 N.E.2d 893.

■ In our review of the record and the preliminary injunction order, we find that the trial court abused its discretion. The Uniform Commercial Code provides that:

"An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit *regardless of whether the goods or documents conform to the underlying contract for sale or other contract* between the customer and the beneficiary." (Ill. Rev. Stat. 1981, ch. 26, par. 5—114(1).)

The letter of credit is essentially a contract between the issuer and

the beneficiary and is recognized as independent of the underlying contract between the customer and the beneficiary. As such, the issuer is under a duty to honor the drafts or demands for payment which comply with the terms of the credit without reference to their compliance with the terms of the underlying contract. (Ill. Ann. Stat., ch. 26, par. 5—114(1), Uniform Commercial Code Comment, at 600 (Smith-Hurd 1981).) Illinois has consistently recognized that there should be a strict limitation on judicial interference in the payment of letters of credit. See *Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.*; *Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 390 N.E.2d 894.

In *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 413 N.E.2d 1288, we stated that if the documents presented comply on their face with the terms of the credit, the issuer is not required or even permitted to go behind the documents before honoring demands for payment, and the issuer's obligation to honor the credit remains intact, even if the underlying agreement has been modified or nonfraudulently breached. (90 Ill. App. 3d 802, 808.) Similarly, in *Stringer Construction Co. v. American Insurance Co.* (1981), 102 Ill. App. 3d 919, 430 N.E.2d 1, we stated that "[a]n injunction against honor, which interferes with business transactions freely negotiated between the parties [citations], should be limited to situations where the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served." 102 Ill. App. 3d 919, 925.

In the pending matter, the letters of credit are "clean" or "unconditional" and contain no reference to the underlying Agreement between PMS and Uniroyal. The trial court's characterization of Uniroyal's actions as fraudulent is improper as there was no basis in the record to support such a finding. PMS' complaint makes no allegations of fraud, either in the factum or in the formation of the underlying contract which would vitiate the entire transaction. (*First Arlington National Bank v. Stathis.*) If there was a breach of the underlying contract, the Agreement provides for arbitration; and in any event the Bank's obligation to pay upon presentation of the letters is not subject to this legal defense. Moreover, PMS has failed to sufficiently demonstrate in its complaint, the irreparable injury it would receive or the absence of an adequate remedy at law. If it were judicially determined that Uniroyal is not entitled to this money, PMS presumably could collect a subsequent money judgment against them.

■ Under the factual circumstances in this instance, we believe it was error to have issued the temporary restraining order and subse-

quently the preliminary injunction because PMS did not meet its burden of proof to entitle it to this type of relief. Accordingly, we are dissolving the preliminary injunction and remanding this matter to the trial court with directions to dismiss PMS' complaint because it is insufficient as a matter of law.

The additional issue of whether Uniroyal elected to be relieved of its obligations under the Agreement with PMS is governed by the pending arbitration proceedings and thus is not properly before us. Further, in light of our disposition of this matter, we find it unnecessary to address the remaining issues.

Reversed and remanded with directions.

LORENZ and MEJDA, JJ., concur.